6 So.3d 164 (2009)
Arthur SNOWTON
v.
SEWERAGE AND WATER BOARD.
No. 2008-C-399.
Supreme Court of Louisiana.
March 17, 2009.
*165 Law Offices of William S. Vincent, Jr., William Jared Vincent, New Orleans, for applicant.
Brian A. Ferrara, Gerard Michael Victor, New Orleans, for respondent.
*166 KNOLL, Justice.[*]
We granted writs in this Workers' Compensation case primarily to address whether it is procedurally necessary to have reargument before a five-judge panel in the Court of Appeal for a reversal of an Office of Workers' Compensation ("OWC") judgment. Plaintiff, Arthur Snowton, filed a disputed claim for compensation with the OWC against his employer, the Sewerage and Water Board of New Orleans ("SWB"). The OWC hearing officer rendered judgment in plaintiff's favor. The court of appeal reversed in a 2-1 decision and subsequently denied rehearing, implicitly denying plaintiff's request to refer this matter to a five-judge panel for consideration. For the following reasons, we find the court of appeal did not err in its refusal to refer this matter to a five-judge panel for reargument and affirm the judgment of the Court of Appeal reversing the judgment of the OWC.

FACTS AND PROCEDURAL HISTORY
On August 15, 2000, plaintiff, a laborer with the SWB, sustained injury to his back while attempting to lift a manhole cover in the course and scope of his employment. Plaintiff was diagnosed with a L4-L5 disc herniation with radiculopathy for which he subsequently underwent a lumbar laminectomy in October 2000.
After the accident, the SWB began paying plaintiff temporary total disability ("TTD") benefits, which benefits were discontinued in November 2003 after the SWB identified other available employment for plaintiff[1] and began paying supplemental earning benefits ("SEB"). Plaintiff, thereafter, filed a disputed claim for compensation with the OWC, asserting the SWB miscalculated his TTD benefits. As a result, plaintiff also sought penalties and attorney's fees. The SWB filed an answer and reconventional demand, asserting that plaintiff was not entitled to SEB because he was able to earn 90 percent of his pre-accident wage. Consequently, the SWB sought a return of the SEB it had paid to plaintiff.
This matter proceeded to a hearing before an OWC hearing officer. The parties stipulated that plaintiff had suffered a work-related injury, but disputed his claim for continued benefits after reaching maximum medical improvement. The disputed issues specifically involved whether plaintiff was capable of working, under what restrictions, and whether such a job was available. At the conclusion of the hearing, the OWC hearing officer rendered judgment in favor of plaintiff finding (1) that plaintiff was entitled to reimbursement for TTD benefits after the SWB miscalculated his pre-injury wages and to the presumption of a forty-hour work week; (2) that plaintiff was entitled to an award of penalties and attorney's fees, based on the SWB's miscalculation; and (3) that plaintiff was entitled to SEB at a zero earnings rate with no credit to his employer for unearned wages, because the employer failed to identify available employment suitable to plaintiff's physical and cognitive limitations.
The SWB appealed, and the Court of Appeal, Fourth Circuit reversed in a 2-1 decision. Snowton v. Sewerage and Water *167 Board, 07-0677 (La.App. 4 Cir. 12/5/07), 972 So.2d 417. The appellate court majority found that the hearing officer erred (1) in concluding plaintiff was entitled to SEB after he reached maximum medical improvement as the record supported the conclusion that plaintiff was capable of working in at least two positions offered to him and each job would have paid him more than 90 percent of his pre-accident wage; (2) in applying the forty-hour work week presumption as the SWB presented sufficient evidence to rebut the presumption; and (3) in awarding penalties and attorney's fees in light of its finding that plaintiff was not entitled to SEB. Therefore, the court of appeal reversed the judgment of the OWC and remanded this matter for recalculation of benefits and credits.
Plaintiff then requested rehearing and consideration by a five-judge panel of the court of appeal. While the appellate court did not specifically act on the motion for consideration, it denied rehearing. Plaintiff applied for writs to this Court, which we granted primarily to address the procedural issue of whether the court of appeal erred in not referring this matter to a five-judge panel in accordance with the provisions of La. Const, art. V, § 8(B). Arthur Snowton v. Sewerage and Water Board of New Orleans, 08-399 (La.5/16/08), 984 So.2d 709.

LAW AND DISCUSSION
In reference to the judgments of the courts of appeal, La. Const, art. V, § 8(B) specifically provides:
Judgments. A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment.
Plaintiff in this case argues that pursuant to this provision, once an appellate judge dissents from a majority decision to reverse the judgment of a hearing officer, the court of appeal is required to refer the case to a five-judge panel. Plaintiff's position finds particular support in this Court's writ grant in Travelers Insurance Co. v. Reliable Home Health Care, Inc., 99-1481 (La.7/2/99), 747 So.2d 4, in which we remanded a 2-1 decision reversing a judgment of the OWC to the court of appeal "for re-argument before a panel of at least five judges. La. Const, art. V, Section 8(B)."[2]
In response, the SWB asserts that La. Const, art. V, § 8(B) is limited to decisions by district courts, and as the OWC is not a constitutionally-created district court, the *168 court of appeal did not err in reversing the judgment of the OWC by a majority of a three-judge panel. Support for the SWB's argument can be found in cases involving reversals of judgments rendered by city courts, American Deposit Ins. Co. v. Myles, 00-2457, p. 5 (La.4/25/01), 783 So.2d 1282, 1285, and decisions of ethics boards and civil service commissions, Bagert v. State Bd. of Ethics for Elected Officials, 594 So.2d 922 (La.App. 1st Cir.1992), and Cannatella v. Department of Civil Service, 592 So.2d 1374, 1378-79 (La.App. 4th Cir.), writ denied, 596 So.2d 215 (La.1992), respectively. In those cases, the reviewing courts held that the constitution did not require reargument before a five-judge panel prior to reversal because the judgments or decisions were not rendered by district courts.
The appellate court in this case did not assign reasons for its refusal to refer this matter to a five-judge panel. We presume the court found the case did not have to be referred to a five-judge panel because the judgment on appeal was not rendered by a district court and, thus, the case did not satisfy the requirements of La. Const, art. V, § 8(B) for reversal. Seemingly, it falls to this Court to interpret whether the language of La. Const, art. V, § 8(B) requires reargument before a five-judge panel prior to reversal or modification of judgments rendered by the OWC when one judge of the original three-judge panel dissents.
According to the general rule, articles of the constitution are to be construed and interpreted using the same canons of interpretation applicable to statutes and written instruments. State v. Expunged Record (No.) 249,044, 03-1940, p. 4 (La.7/2/04), 881 So.2d 104, 107; Barnett v. Develle, 289 So.2d 129, 146 (La.1974). Thus, under the well-established rules of statutory construction, any interpretation of constitutional provisions begins with the language of the constitution itself. Record, 03-1940 at p. 4, 881 So.2d at 107; Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066, pp. 6-7 (La.7/6/04), 880 So.2d 1, 7.
When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. Perschall v. State, 96-0322, p. 21-22 (La.7/1/97), 697 So.2d 240, 255; Cajun Elec. Power Co-op., Inc. v. Louisiana Pub. Serv. Com'n, 544 So.2d 362, 363 (La.1989) (on rehearing). Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. Ocean Energy, 04-0066 at p. 7, 880 So.2d at 7; Cajun Elec, 544 So.2d at 363. Accordingly, we are bound by the plain language of the constitutional provision to which we now turn.
The language of La. Const, art. V, § 8(B) requires reargument "when a judgment of a district court is to be modified or reversed and one judge dissents." Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La. L.Rev. 765, 808 (1976-1977). Specifically, it provides that in such reversals or modifications, "the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment." La. Const, art. V, § 8(B). This required reargument is not for all rehearings, but rather reargument is triggered "prior to rendition of judgment," when the district court judgment is to be modified or reversed on a question of law or a question of fact and one judge dissents. Hargrave, supra.
Moreover, clearly by its terms, the reargument required by La. Const, art. V, *169 § 8(B) is limited to district court judgments, which are modified or reversed by the majority of the three-judge panel. American Deposit Ins. Co., 00-2457 at p. 5, 783 So.2d at 1285. By its terms the provision does not apply if a district court judgment is sustained, even if one judge dissents, or in criminal matters. Hargrave, supra. Therefore, by implication, this provision does not apply to OWC judgments, which are rendered not by a district court, but by an administrative agency within the Department of Labor. See Albe v. Louisiana Workers' Compensation Corp., 97-0581, p. 8 (La.10/21/97), 700 So.2d 824, 828.[3] Thus, we find the plain language of the constitutional provision by which we are bound clearly limits the application of the five-judge panel reargument requirement to district court judgments and does not apply to judgments rendered by the OWC. Accordingly, our decision in Travelers to the contrary is hereby overruled.[4]
Because this case originated in the OWC, the constitution does not require *170 reargument for reversal by the court of appeal. Thus, the court of appeal properly did not refer the appeal for reargument before a five-judge panel.
As to the merits, plaintiff argues the court of appeal applied the improper standard of review and erroneously reversed the findings of the OWC. In granting this application, we were concerned that the court of appeal may have disregarded the OWC's factual findings. However, after careful review of the record and the court of appeal opinion, we find the court of appeal was correct in concluding there was insufficient support for the OWC's factual findings.
On the issue of plaintiff's entitlement to SEB, the sole question presented was whether plaintiff is able to perform some work, thus entitling the SWB to a credit against his SEB. The OWC concluded that the SWB failed to identify available employment suitable to plaintiff's physical and cognitive limitations. However, insofar as the OWC held that plaintiff was not mentally or physically capable of working at least one of the jobs identified by the SWB, specifically, the groundskeeper job,[5] its conclusion is clearly wrong. We note the record shows even plaintiff's expert agreed on cross-examination that plaintiff could perform the groundskeeper job, subject to the restrictions prescribed by plaintiff's treating physician.[6] Thus, plaintiff is not entitled to SEB, and the court of appeal correctly reversed the OWC judgment awarding attorney's fees and penalties. Moreover, as to the calculation of plaintiff's TTD benefits, the court of appeal correctly found that, based on the evidence submitted in the record, the SWB successfully rebutted the forty-hour work week presumption, and the OWC erred in presuming plaintiff worked a forty-hour week for purposes of calculating his benefits.
Accordingly, we find the court of appeal correctly applied the manifest error/clearly wrong standard of review in reversing the judgment of the OWC and affirm the judgment of the court of appeal.

DECREE
For the foregoing reasons, we find the court of appeal did not err in refusing to refer this matter to a five-judge panel for reargument and affirm the judgment of the court of appeal reversing the judgment of the OWC. Case remanded to the OWC in keeping with the Court of Appeal opinion.
AFFIRMED and REMANDED.
JOHNSON, J. dissents and assigns reasons.
JOHNSON, J., dissenting.
I respectfully dissent.
LSA-Const. Art. V, § 8(b) provides:

*171 A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment. (Emphasis added).
Admittedly, the Office of Workers' Compensation is not a "district court," but, rather, an administrative agency. However, in my view, it is necessary to treat workers' compensation matters differently than judgments in city court cases, or decisions of ethics boards and civil service commissions.
At the time the 1974 Constitution was adopted, workers' compensation matters were heard by the district court. During that time, this court held that a 2-1 reversal of a district court's ruling in a workers' compensation matter must be reargued before a five-judge panel. Virgil v. American Guarantee & Liab. Ins. Co., 514 So.2d 1169 (La.1987).
In 1990, the voters approved an amendment to La. Const. Art. V, § 16(A)(1), which became effective November 8, 1990, and provides:
Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in workers' compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.
Thereafter, the Office of Workers' Compensation ("OWC") assumed jurisdiction of workers' compensation matters.
As explained in. Albe v. Louisiana Workers' Compensation Corp., 97-0581 (La.10/21/97), 700 So.2d 824, the Office of Workers' Compensation is not a court, but an administrative agency created within the Department of Labor. However, Albe also recognized that following the constitutional amendment, the OWC has adjudicative and fact-finding powers akin to those of a district court, and exercises some of the functions previously reserved to the judiciary.[1] Seen in this light, I would find that, for procedural purposes, the OWC is the functional equivalent of the district court. Thus, the change in jurisdiction for workers' compensation cases from the district court to the OWC did not *172 alter the requirement that, as with district courts, the same five-judge panel safeguard should apply.
For these reasons, I would reverse the court of appeal and remand this matter to a five judge panel to resolve the merits of this case.
NOTES
[*] Calogero, C. J., retired, recused. Chief Justice Calogero recused himself after oral argument, and he has not participated in the deliberation of this case.
[1] The SWB identified several jobs, including equipment operator, office assistant, parking control officer, groundskeeper with the SWB, a grounds maintenance worker, counter helper at a T-shirt shop, a lube technician at a car wash, and a badge checker with a security company.
[2] This Court in Virgil v. American Guarantee & Liab. Ins. Co., 514 So.2d 1169, 1169 (La. 1987) remanded a 2-1 reversal of a district court's ruling in a workers' compensation matter "to be argued before a panel of at least five judges. See La. Const, art. 5, section 8(B)." At that time, however, workers' compensation matters were heard by the district court. This changed in 1990 with the approval by Louisiana voters of an amendment to La. Const, art. V, § 16(A)(1), which became effective November 8, 1990, and provided:

Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.
See Albe v. Louisiana Workers' Compensation Corp., 97-0581, p. 5 (La. 10/21/97), 700 So.2d 824, 827. Thereafter and in conjunction with La.Rev.Stat. § 23:1310.3(E), the OWC assumed original and exclusive jurisdiction to adjudicate workers' substantive claims arising under the Workers' Compensation Act. Id.
[3] Albe explains that

[t]he Office of Worker's Compensation Administration was created within the Department of Labor for the purpose of administering the provisions of the Workers' Compensation Act. La.R.S. 23:1291. The administrative hearing officers are appointed by the director of the Office of Workers' Compensation Administration, who is in turn subject to the general administrative authority of the secretary of the Department of Labor. La.R.S. 23:1310.1 and La. R.S. 23:1310.2. There is no doubt that the Office of Workers' Compensation ... is an administrative agency.
* * *
Administrative agencies are a governmental hybrid, exercising powers similar to those exercised by all three branches of government. While agencies have rulemaking authority that shadows the powers of the legislature, they do not have the power to make law. Similarly, agencies have adjudicative and fact finding powers that mimic those exercised by courts. Although we recognize the Office of Workers' Compensation Administration constitutionally employs certain functions previously reserved to the judiciary in pursuit of its statutory duties, the exercise of these quasi-judicial functions does not make hearing officers judges under Art. V. Put simply, the hearing officers of the Office of Workers' Compensation Administration are not authorized to exercise "judicial power" under Art. 5, § 1. Their authority was properly restricted to "administrative agency determinations" by Art. V, § 16(A).
Id. at 828.
[4] Our decision in Virgil still stands, however, because at the time it was rendered, district courts had original jurisdiction over workers' compensation matters, and the provisions of La. Const, art. V, § 8(B) clearly apply to district court judgments that are reversed or modified by the court of appeal.

Our research has also revealed that the Second, Third, and Fifth Circuits, without assigning reasons for the practice, have referred workers' compensation appeals to five-judge panels prior to reversal or modification of OWC judgments when one or more judges have dissented. Freeman v. Poulan/Weed Eater, 618 So.2d 618 (La.App. 2d Cir. 1993); Sharbono v. Steve Lang & Son Loggers, 96-405 (La.App. 3 Cir. 12/11/96), 685 So.2d 559; Montgomery v. Lafayette Parish Sch. Bd., 95-1613 (La.App. 3 Cir. 7/3/96), 677 So.2d 162; Chevalier v. Bossier, 94-1537 (La.App. 3 Cir. 7/12/95), 663 So.2d 70; Miller v. Roger Miller Sand, Inc., 93-252 (La.App. 3 Cir. 2/9/94), 632 So.2d 1176; Doucet v. Baker Hughes Prod. Tools, 626 So.2d 948 (La.App. 3d Cir.1993); Boudreaux v. Production Management, Inc., 94-960 (La.App. 5 Cir. 11/15/95), 665 So.2d 497, respectively. While La. Const. Art. V, § 8(B) does not mandate this practice, it does not necessarily prohibit it. Moreover, La. Const. Art. V, § 8(A) provides that each Court of Appeal "shall sit in panels of at least three judges selected according to rules adopted by the court." Thus, according to our research, nothing in the constitution prohibits a court of appeal from referring appeals from OWC judgments to five-judge panels for reargument prior to rendition of a judgment of reversal or modification in accordance with its own rules. Those courts, however, are not constitutionally required to do so.
Nevertheless, the Second Circuit did err in stating that "LSA-Const. Art. 5, § 8, mandated a reargument of this appeal before a five-judge panel when one judge of the original three-judge panel dissented to an opinion reversing the judgment of the Worker's Compensation Hearing Officer" in McCoy v. City of Shreveport Fire Dept., 26, 181, p. 1 (La.App. 2 Cir. 1/25/95), 649 So.2d 103, 104.
[5] According to testimony, the groundskeeper job consisted of picking up trash with a stick with a nail in it and a little bag to put the trash in. The workers "would stab or pick up a few pieces of paper. Sit on the side, talk a little bit and move around. But, as long as they kept the yard clean of litter and all, that was their primary concern." Transcript of Proceedings at 127, Snowton v. Sewerage and Water Board of New Orleans, 03-07846 (OWC Dist. 8 11/15/06). Moreover, as evident in the record, plaintiff could earn more than 90 percent of his pre-accident wage at this job.
[6] Plaintiff's physician, Dr. Charles Murphy, restricted plaintiff's capacity to assume certain positions, sitting, standing, bending, walking, stooping, kneeling, crawling, reaching, and pushing and pulling to "occasional," and limited his ability to lift to ten pounds.
[1] Albe stated:

Prior to July 1, 1983, all claims for worker's compensation benefits were filed as a civil suit in state district court. In 1983, the Office of Worker's Compensation Administration was established, and disputed claims for worker's compensation benefits were evaluated by the director of the OWC, who issued an advisory recommendation which could be accepted or rejected by the employee. If the employee rejected this recommendation, he was free to file suit in district court.
The worker's compensation adjudication system was again changed by Act 938 of 1988, which became effective January 1, 1990. Under Act 938, a system of nine administrative hearing officers was created, and the hearing officers were vested with "original, exclusive jurisdiction over all claims filed pursuant to the Worker's Compensation Act." However, in Moore v. Roemer, 567 So.2d 75 (La.1990), this court invalidated the hearing officer system, holding that Act 938 of 1988 divested the district court of original jurisdiction in violation of La. Const, art. V, § 16(A). See Long v. Insurance Co. of North America, 595 So.2d 636 (La. 1992).
Subsequent to Moore v. Roemer, LSA-Const. Art. V, § 16(A) was amended to provide, in relevant part:
Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.
LSA-Const. Art. V, § 16(A)(1); (Emphasis added). This amendment became effective on November 8, 1990.
LSA-R.S. 23:1310.3(E) is the statutory grant of jurisdiction to hearing officers authorized by LSA-Const. art. V, § 16(A)(1). It states:
Except as otherwise provided by R.S. 23:1101(D) and 1378(E), the hearing officer shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter.
LSA-R.S. 23:1310.3(E)(Emphasis added).
* * *
The Office of Worker's Compensation Administration was created within the Department of Labor for the purpose of administering the provisions of the Workers' Compensation Act. La.R.S. 23:1291. The administrative hearing officers are appointed by the director of the Office of Workers' Compensation Administration, who is in turn subject to the general administrative authority of the secretary of the Department of Labor. La.R.S. 23:1310.1 and La. R.S. 23:1310.2. There is no doubt that the Office of Workers' Compensation ... is an administrative agency.
* * *
Administrative agencies are a governmental hybrid, exercising powers similar to those exercised by all three branches of government. While agencies have rulemaking authority that shadows the powers of the legislature, they do not have the power to make law. Similarly, agencies have adjudicative and fact finding powers that mimic those exercised by courts. Although we recognize the Office of Workers' Compensation Administration constitutionally employs certain functions previously reserved to the judiciary in pursuit of its statutory duties, the exercise of these quasi-judicial functions does not make hearing officers judges under Art. V. Put simply, the hearing officers of the Office of Workers' Compensation Administration are not authorized to exercise "judicial power" under Art. 5, § 1. Their authority was properly restricted to "administrative agency determinations" by Art. V, § 16(A). [emphasis added]
Albe, 700 So.2d at 826-828.